Michael Power, Esq.
Power and Associates, P.C.
One Greentree Centre
Suite 201
Marlton, NJ 08053
(856) 616-0086
Attorneys for Plaintiffs, Robert Deficcio and Mary Jo Deficcio

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT DEFICCIO and** : | |
| **MARY JO DEFICCIO** : | |
| : | **Civil Action No. 3:11-cv-00872-** |
| : | **MLC-DEA** |
| **Plaintiff** : | |
| : | |
| **WINNEBAGO INDUSTRIES, INC., and** : | |
| : | **PLAINTIFFS' BRIEF IN** |
| **FREIGHTLINER, LLC** : | **OPPOSITION TO DEFENDANTS'** |
| : | **MOTION TO DISMISS** |
| **Defendants** : | |

AND NOW, plaintiffs, Robert Deficcio and Mary Jo Deficcio ("Plaintiffs"), hereby respond to defendants' Motion To Dismiss Pursuant to Rule 12(b)(6):

## FACTUAL BACKGROUND

On September 14, 2007, plaintiffs purchased a new 2008 Winnebago 40TD Vectra motor home (hereinafter the "vehicle" or "motor home") from Media Camping Center, an authorized Winnebago sales and service dealership. The vehicle was equipped with a body and non chassis components manufactured and warranted by Winnebago. The vehicle was equipped with a chassis manufactured and warranted by Freightliner. The purchase price of the vehicle, including registration charges, document fees and sales tax but, <u>excluding</u> other collateral charges not

1

specified, yet recoverable under the New Jersey Lemon Law and other statutes, totaled more than $253,012.  Complaint, ¶ 4-7.

In consideration of the purchase of the vehicle, Winnebago issued to plaintiffs a series of express written warranties covering the body and non chassis components of the vehicle. These warranties included, but are not limited to, a 12 month/15,000 mile bumper to bumper warranty, a 36 month/36,000 mile structural warranty and a 10 year roof skin warranty. In addition, the vehicle was impliedly warranted by Winnebago including, but not limited to, an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. Complaint, ¶ 8,9.

Freightliner issued to plaintiffs a 36 month/36,000 mile express written warranty which covered the vehicle's chassis components.  In addition, the vehicle was impliedly warranted by Freightliner including, but not limited to, an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. Complaint, ¶ 10, 11.

Plaintiffs' vehicle has suffered numerous breakdowns and component failures which have either not been remedied by defendants or were not remedied by defendants within a reasonable period of time or a reasonable number of repair attempts.  Plaintiffs delivered their vehicle to authorized dealers of defendants on numerous occasions and the nonconformities either remain unrepaired or were not remedied by defendants within a reasonable period of time or a reasonable number of repair attempts. In addition to those incidents when plaintiffs delivered their vehicle to dealerships for repairs, plaintiffs have also been stranded by various defects and conditions at remote locations requiring repairs at such locations.  Complaint, ¶ 12-14.

Plaintiffs and Winnebago attempted to resolve their disagreements concerning the vehicle by way of a Settlement Agreement And Release dated May 27, 2010 (hereinafter the May

Agreement". The May Agreement called for Winnebago to transport the vehicle to Winnebago's Forest City, Iowa manufacturing facility to effectuate numerous repairs on specified components. In addition, the May Agreement called for Winnebago to pay plaintiffs a sum of $17,500. Complaint, ¶ 16-17.

Plaintiffs allowed their vehicle to be transported to Winnebago's manufacturing facility for the agreed upon repairs where the vehicle remained for an extended period of time, well in excess of the repair time Winnebago initially informed the plaintiffs would be necessary. Upon return of the vehicle, Plaintiffs discovered numerous unrepaired defects and conditions that specifically required repair pursuant to the May Agreement. In addition, plaintiffs discovered numerous additional items of damage that were inflicted on the vehicle while in the possession and control of Winnebago during Winnebago's performance of the May Agreement repairs. These items include, but are not limited to, the following:

- The newly installed cabinetry exhibited a white substance at the cabinet joints;
- The driver's side and passenger side curtain rails are unsecured;
- The driver's side curtain is stained with a white substance;
- The curtain rail is not flat against the bottom of the cabinets;
- The driver/passenger side cabinets are not level which prevents proper installation and/or operation of the curtain rails;
- The wallpaper is torn at the ceiling above the refrigerator;
- The shower head arm is not secured and is not straight;
- The shower faucet is improperly plumbed and does not contain a stop;
- The newly installed top trim molding (installed in pieces) is not flush;
- The cloth sofa in the main living area has yet to be adjusted resulting in excessive fabric wear and there exists a completely unsecured bracket (that secures the couch footrest to railing);
- The lights above the couch and certain hallway lights do not work;
- The newly replaced speaker cabinet next to the bed (next to radio night

stand) is not secured to the units wall (the unsecured screws are visible);

-The pocket door trim (opposite the pocket door) is not secured;

-The newly replaced cabinet doors over the microwave are not plumb and the hardware bracket behind the left door is not secured preventing the door from being closed;

-The vertical section of cabinetry located adjacent to the oven was not replaced. This piece exhibits the white ghosting effect which led to the replacement of other cabinetry;

-The cabinet over the front door is not secured to the walls of the unit and the cloth panel inside that cabinet is flimsy due to the lack of a backer panel;

-One of the decorative top molding inserts is not flush to the adjoining molding;

-The cabinet siding by the sink (siding with switches) was damaged while in the possession of Winnebago and non-workmanlike repairs were attempted to mask the damage;

-The remotes work intermittently and/or do not work at all;

-The entrance door awning does not retract flush into the casing;

-The main awning still does not work consistently with remotes. It hesitates and is sluggish at times;

-Fiberglass at the front door area was damaged and, rather than repaired, was simply painted over leaving three hole marks and an 18" line in the exterior wall;

-The bottom of one cabinet located in the main living area over the leather couch does not properly fit and droops below the proper bottom level of the cabinet;

-A shelf in the rear closet was broken in transit as a result of 2 folding chairs being placed on the shelf unsecured. The weight of the chairs and the bouncing during travel resulted in breakage of the shelf and scratches from the unsecured chairs to the closet walls and chairs;

-Many areas of the roof remain unrepaired including numerous spider cracks and a large crack on the rear of the roof;

-The front entry door's chronic leaking condition was not repaired. Daylight was observable between the top of the door and the bottom of the upper door frame door frame. The water floods the floor and carpet, splashes on the leather seats and gets into and on the door causing rusting and potential damage to electrical components located in the door;

-The vehicle's house batteries still fail to hold a proper charge;

-Torn wallpaper around molding in living area where trim was replaced;

-Damage to head liner above dash on passenger side (torn);

-The patio awning is not properly attached and the awning rod is not properly placed in the pocket;

-There is a tear on the ceiling above the bed;

-The new molding repair pieces do not butt together and there exist numerous gaps between the molding pieces;

-Screen on main door is not attached at top on the right or the left;

-There exists paint cracks resulting from door adjustments;

-The front entry door still was not plumb and exhibited a constant rattling when the vehicle was in motion;

-The floor molding under the bed was never flattened or straightened;

-The rear storage compartments continue to exhibit water intrusion;

-The cabinets above the dash are not sitting flush;

-The cabinet doors under the living room TV are extremely tight and will not shut;

-One drawer in the hallway will not shut;

-One night stand drawer was not replaced and the other is delaminating;

-The bed and night stand make noise to the extent that sleep is difficult;

-The drawer under the refrigerator does not properly close and constantly falls off its tracks;

-The long wood trim in the rear of the passenger seat is unsecured;

-The cabinet doors around the table top and bottom open in the wrong direction;

-A bathroom vanity drawer will not close;

-The driver side pull down shade is crooked;

-The kitchen plumbing has been reversed and modified in a manner which eliminates storage room beneath the sink;

-The replacement counter tops are smoky in color around the edges and appear to be made of a different material than the originals;

-There is undisclosed damage to the exterior wall outside between the microwave vent and the door that has been repaired poorly;

-The drawer under the TV is scrapping the newly replaced countertops (drawer has no weight in it);

-The vehicle's jacks are failing to operate correctly;

-There exist numerous pencil marks on the walls and wall paper resulting

form the May Agreement repairs;

-Plaintiffs have been trapped in the motor home as a result of a defective lock mechanism which may have rusted due to the ongoing water leaks in the front door area;

-It has been discovered that not all the cabinetry was replaced with new cabinetry as was agreed in the May Agreement. Rather, some items of cabinetry were never replaced and some of the replacement cabinetry pieces were not newly manufactured as agreed to;

-The vehicle has experienced numerous warning lights and alarms since the vehicle was returned from Iowa. These alarms are designed to alert the plaintiffs to overheated coolant, overheated batteries and other defects and conditions;

Plaintiffs continue to discover additional unrepaired items referenced in the May Agreement as well as additional items damaged by Winnebago during Winnebago's performance of the May Agreement repairs. Complaint, ¶ 19-20.

Plaintiffs' complaint further alleges that Winnebago knowingly and intentionally failed to repair numerous of the defects and conditions specified in the May Agreement, including the replacement of each piece of cabinetry, replacement of the remote control modules which had previously been programmed by the plaintiffs with their own private personal codes, believing that Plaintiffs would have no means of confirming the intentionally skipped repairs. Complaint, ¶ 21.

Plaintiffs' complaint further alleges that the failure of Winnebago to adequately perform repairs under the May Agreement, the additional damages inflicted on Plaintiffs' vehicle during the May repairs as well as the Winnebago's intentional failure to repair items that Winnebago believed Plaintiffs would be unable to confirm, represent material breaches of the May Agreement. Further, Plaintiffs' complaint alleges that the failure of Winnebago to perform the repairs required under the May Agreement renders the May Agreement void and any release of claims set forth in the May Agreement is unenforceable as a result of Winnebago's material

breach of the May Agreement. Complaint, ¶ 22, 23.

## STANDARD OF REVIEW

In evaluating a 12(b)(6) motion the Court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224 (3rd, Cir. 2008). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense". *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (U.S. 2009).

## LEGAL ARGUMENT

### I. Winnebago Materially Breached the May Agreement Resulting in A Failure Of Consideration

Plaintiffs engaged in a good faith effort to resolve their differences with Winnebago by entering into the May Agreement.[1] The purpose of the May Agreement was to allow Winnebago to repair the numerous defects and conditions specified by Plaintiffs at its Indiana repair facilities and return the vehicle to Plaintiffs in a good operational condition. In exchange, the Plaintiffs agreed to release the manufacturers of certain claims which would become effective

---

[1] Plaintiffs negotiated only with Winnebago concerning the May Agreement. When formalizing the agreement, Winnebago added Media Camping Center, Inc., and Freightliner Custom Chassis Corporation as parties to the agreement. Plaintiffs did not object to the added parties.

once Winnebago provided consideration for the may Agreement-effective repairs to the vehicle. Instead, when the vehicle was returned to Plaintiffs it possessed an extraordinary number of nonconformities that Winnebago either failed to repair or which were inflicted on Plaintiffs' vehicle by Winnebago during the attempted May Agreement repairs. In addition, Plaintiffs alleged that Winnebago failed to complete various repairs which Winnebago assumed Plaintiffs would be unable to confirm.

Plaintiffs and defendants agree that a settlement agreement is a contract and that the settlement agreement, and the parties' compliance with the settlement agreement, are to be interpreted using basic contract law. When there exists a breach of a material term of a settlement agreement, the non-breaching party is relieved of its obligations under the settlement agreement. *Nolan. V. Lee Ho*, 120 N.J. 465, 577 A.2d 143 (1990); *McDonnell v. Engine Distributors*, 2007 U.S. Dist. LEXIS 70925 (D. N.J., 2007).

The language of the May Agreement specifically states that "in exchange for the consideration noted in paragraph one (1) above, Consumers hereby release and forever discharge Winnebago Industries, Inc.....from any and all claims...that were asserted or could have been asserted involving the subject vehicle up to the date of this Settlement Agreement and Release..." (Complaint, Exhibit "E"). The consideration set forth in paragraph one (1) of the May Agreement was repairs to be performed as set forth in exhibits to the May Agreement plus the payment of monies. By its abject failure to properly repair the vehicle, Winnebago has failed to provide consideration for the May Agreement and, accordingly, there is a failure of consideration

for Plaintiffs' release of claims against the manufacturers. [2]

## II.  Plaintiffs' Complaint Contains Claims Not Encompassed by The May Agreement

Assuming arguendo, that Winnebago did not materially breach the May Agreement, many of the claims set forth in Plaintiffs' Complaint are not encompassed by the May Agreement. The May Agreement only purports to release the Manufacturers of liability "...from any and all claims...that were asserted or could have been asserted involving the subject vehicle up to the date of this Settlement Agreement and Release..."(Complaint, Exhibit "E").

Plaintiffs' complaint sets forth claims based not merely upon the defects and conditions in existence at the time of the May Agreement, but also sets forth claims for damages inflicted on the vehicle during Winnebago's purported attempts to perform the May Agreement mandated repairs. Further, Plaintiff's complaint alleges that Winnebago intentionally failed to perform certain hard to confirm repairs. Claims for these damages clearly could not have been asserted at the time of the May Agreement and are not released by the May Agreement.

## III.  The May Agreement Must Be Set Aside For Fraud And Unseemly Behavior

Plaintiffs' Complaint alleges that Winnebago intentionally failed to make certain repairs on Plaintiffs' vehicle knowing the assuming that Plaintiffs would not be able to confirm such repairs. If a settlement agreement is achieved through deception, fraud, or unseemly behavior, the settlement agreement must be set aside. *Wolkoff v. Villane*, 288 N.J. Super. 282; 672 A.2d

---

[2]. To the extent monies were paid to Plaintiffs prior to the botched repairs and other damages inflicted on the vehicle, Plaintiffs acknowledge that such payment will act as a credit for damages assessed against defendants at the time of trial. See *Mohr v. Pennsylvania Railroad*, 409 F.2d 73, 75 (3rd. Cir. 1969).

242 (1996); *Peskin v. Peskin*, 271 N.J. Super. 261; 638 A.2d 849 (1993); *Nolan. V. Lee Ho*, 120 N.J. 465, 577 A.2d 143 (1990); *Honeywell v. Bubb*, 130 N.J. Super. 325 A.2d 832 (App. Div. 1974).

### IV.     The Case Law Cited By Defendants Is Easily Distinguishable

Defendants have cited various cases which purport to support their argument that the may Agreement bars Plaintiff's present action. However, as described below, such cases are easily distinguished for the present case and fail to support defendants' position.

In the case of *Pascarella v. Bruck*, 190 N.J. Super. 118, 462 A.2d 186 (App. Div. 1983), the defendant challenged a judgment of the Superior Court which set aside a $25,000 settlement in a medical malpractice action. The Appellate Division held that the parties had entered into a valid settlement agreement and refused to entertain the plaintiffs argument that the settlement amount was inadequate for the injury. In Pascarella there was no allegation that the defendant had refused or in any other way failed to offer the consideration for the settlement, the payment of the $25,000. In contrast, in the instant case, Plaintiffs assert that the primary consideration for the May Agreement, the vehicle repairs, were not provided.

In *Jennings v. Reed*, 381 N.J. Super. 217, 885 A.2d 482 (App. Div. 2005), the defendants sued to enforce the settlement agreement and the plaintiffs alleged they were coerced into entering the settlement agreement. Unlike the present case, the Jennings case did not deal with the issue of failed consideration by any party to the settlement agreement.

### CONCLUSION

In conclusion, Plaintiff's complaint alleges a breach of Winnebago's obligations under

the settlement agreement and a resulting lack of consideration for plaintiffs' release of claims. Further, Plaintiffs had alleged that Winnebago has damaged plaintiffs' vehicle while purportedly attempting to make the repairs mandated by the May Agreement which are not subject to the scope of the May Agreement. Lastly, Plaintiffs have alleged that Winnebago intentionally failed to perform required repairs that Winnebago believed Plaintiffs would be unable to confirm. Accordingly, the May Agreement fails for lack of consideration and Plaintiffs' claims must proceed.

POWER & ASSOCIATES, P.C.

MICHAEL POWER
One Greentree Centre
Suite 201
Marlton, NJ 08053
856-616-0086