**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ROBERT DEFICCIO, et al., | CIVIL ACTION NO. 11-872 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. |  |
| WINNEBAGO INDUSTRIES, et al., |  |
| Defendants. |  |

**COOPER, District Judge**

Plaintiffs, Robert Deficcio and Mary Jo Deficcio (collectively, "Plaintiffs"), brought this action in New Jersey Superior Court, Mercer County, against defendants, Winnebago Industries, Inc. ("Winnebago," named in the Complaint as "Winnebago Industries") and Freightliner Custom Chassis Corp. ("Freightliner," named in the Complaint as "Freightliner, LLC") (collectively, "Defendants").  Defendants removed the action to this Court on the basis that subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1367.  (Dkt. entry no. 1, Rmv. Not. at 2-3.)  The Complaint alleges violations of the New Jersey Lemon Law, N.J.S.A. § 56:12-29 et seq. (Count I), the Magnusnon-Moss Warranty Improvement Act, 15 U.S.C. § 2301 et seq. (Count II), breach of express and implied warranties (Count III), and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq. (Count IV), in connection with a 2008 Winnebago 40TD Vectra motor home (the "vehicle") purchased by Plaintiffs on September

14, 2007.  (Rmv. Not., Ex. A, Compl.)[1]  Plaintiffs also seek "revocation of acceptance" of the vehicle with respect to the contract for the sale of the same due to the vehicle's "various nonconformities," and demand return of the purchase price (Count V).  (Id. at ¶¶ 60-64.)

Defendants now jointly move to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), on the basis that a Settlement Agreement and Release dated May 27, 2010 ("Settlement Agreement") forecloses the Plaintiffs' claims.  (Dkt. entry no. 8, Mot. to Dismiss.)  For the reasons stated herein, the Court will grant the motion.

## BACKGROUND

Plaintiffs purchased the vehicle for more than $253,000.  (Compl. at ¶ 7.)  Winnebago issued express written warranties covering the vehicle's body and non-chassis components including a 12 month/15,000 mile bumper to bumper warranty, a 36 month/36,000 mile structural warranty, and a 10 year roof skin warranty.  (Id. at ¶ 8.)  Freightliner warranted the vehicle's chassis components pursuant to a 36 month/36,000 mile express written warranty.  (Id. at ¶ 10.)  Plaintiffs assert that Winnebago and Freightliner both made implied warranties of

---

[1] The vehicle is equipped with (1) a body and non-chassis components manufactured and warranted by Winnebago, and (2) a chassis manufactured and warranted by Freightliner.  (Compl. at ¶¶ 6-7.)

merchantability and fitness for a particular purpose with respect to the vehicle.  (Id. at ¶¶ 9, 11.)

Plaintiffs allege that the vehicle "has suffered numerous breakdowns and component failures which have either not been remedied by defendants or were not remedied by defendants within a reasonable period of time or a reasonable number of repair attempts."  (Id. at ¶ 12.)  Plaintiffs delivered the vehicle to authorized dealers for repairs on numerous occasions, but remained dissatisfied with attempts to repair "various defective components and/or conditions," and found themselves occasionally "stranded . . . at remote locations" when repairs were needed.  (Id. at ¶¶ 13-15.)  Plaintiffs ultimately contacted Winnebago directly in an effort to arrange for repairs without the need for Plaintiffs to deliver the vehicle to authorized dealers.  (Id. at ¶ 15.)

Plaintiffs and Winnebago negotiated certain repairs to be made to the vehicle, and entered into the Settlement Agreement on May 27, 2010.  (Id. at ¶ 16 & Compl. Ex. E, 5-27-10 Settlement Agreement.)  The Settlement Agreement was executed by both Plaintiffs before a notary, and approved "as to form and consent" by their attorney.  The Settlement Agreement provided that Winnebago would transport the vehicle to and from its Forest City, Iowa manufacturing facility for repairs.  (Compl. at ¶ 17.)  Such repairs, listed in exhibits to the Settlement Agreement, were to be "performed to commercially reasonable standards and

warranted by Winnebago for six (6) months from the return of the vehicle" to Plaintiffs.  (5-27-10 Settlement Agreement at ¶ 1.)[2] Additionally, Winnebago agreed to pay Plaintiffs $17,500.  (Id.) In exchange, Plaintiffs agreed to release and forever discharge both Winnebago and Freightliner "from any and all claims and causes of action . . . based on any alleged defects or non-conformities which were asserted or could have been asserted involving the Subject Vehicle up to the date of this Settlement Agreement and Release."  (Id. at ¶ 2.)

The Settlement Agreement further provided that Plaintiffs agreed to release and unconditionally waive any right to use the prior repair attempts or the repairs bargained for in the Settlement Agreement as (1) a basis for "meeting any eligibility requirements for any future claim under any state or federal law," (2) "evidence that a defect exists in the Subject Vehicle in any future claim," or (3) "evidence that [Winnebago or Freightliner] . . . failed to repair the Subject Vehicle after a reasonable number of attempts or after a reasonable opportunity to repair it."  (Id. at ¶ 3.)  The Settlement Agreement states that Plaintiffs "acknowledge and agree that the Release set forth herein is a general release and . . . agree that they have accepted payment of the sum and other consideration specified

---

[2] The Settlement Agreement explicitly specified that it was not intended to diminish, suspend, or cancel any already-existing warranty coverage in effect and applicable to the vehicle.  (Id. at 2.)

herein as a complete compromise of matters involving disputed issues of law and fact arising as a result of their purchase of the Subject Vehicle and they assume the risk that the facts or law may be otherwise than they believe." (Id. at ¶ 4.)

Plaintiffs state that the vehicle remained at Winnebago's Iowa facility for repairs for a longer time than originally contemplated. (Compl. at ¶ 19.) Plaintiffs further allege that when the vehicle was returned to them, they noticed "numerous unrepaired defects and conditions that were to be repaired or replaced pursuant to" the Settlement Agreement, and in addition the vehicle had sustained new and additional damage while in Winnebago's custody. (Id. at ¶ 20.) The Complaint lists fifty-six examples of unrepaired damage to or defects of the vehicle. (Id.)

The Complaint asserts that Winnebago: (1) "knowingly and intentionally failed to repair numerous of the defects and conditions they agreed to perform in the [Settlement] Agreement . . . that Winnebago believed plaintiffs would have no means of confirming"; (2) materially breached the Settlement Agreement by failing to adequately perform the repairs specified therein; and (3) by materially breaching the Settlement Agreement, rendered the Settlement Agreement void, such that "any release of claims set forth in the [Settlement] Agreement is unenforceable." (Id. at ¶¶ 21-23.)

The Complaint does not seek relief pursuant to the Settlement Agreement. Rather, each of the claims asserted therein arose prior to the execution of the May 27, 2010 Settlement Agreement. (See, e.g., Count I, Compl. at ¶¶ 28-30 (New Jersey Lemon Law claim referring to purchase of vehicle and subsequent repair invoices pre-dating Settlement Agreement); Count II, Compl. at ¶¶ 39-41 (Magnuson-Moss claim referring to express written and implied warranties and Defendants' "attempts on several occasions" to comply with the same); Count III, Compl. at ¶¶ 44-48 (breach of warranty claims referring to "the time of the purchase and all subsequent times thereto"); Count IV, Compl. at ¶¶ 51-55 (NJCFA claim based on "Defendants' actions surrounding the sale and servicing of the subject vehicle," servicing dealers' alleged failure to provide invoices for some repairs, and selling dealer's failure to provide Plaintiffs a Lemon Law disclosure statement); Count V, Compl. at ¶¶ 60-63 (seeking rescission of purchase contract based on alleged nonconformities of the vehicle identified by Plaintiffs "almost immediately after delivery of the vehicle").)

Defendants move to dismiss the Complaint, arguing that the Settlement Agreement is enforceable and bars Plaintiffs' claims. (Dkt. entry no. 8, Defs. Br. at 5.) Defendants contend that the plain language of the Settlement Agreement "released Defendants from 'any and all claims and causes of action . . . which were asserted or could have been asserted involving the Subject

Vehicle up to the date of this Settlement Agreement and Release.'" (Defs. Br. at 5.) Defendants observe that Plaintiffs do not allege in the Complaint that the Settlement Agreement is "voidable based upon any well-established contract principles such as fraud, duress or unconscionablility." (Id. at 6.)

Plaintiffs, in opposition to the motion, argue that Winnebago's alleged material breach of the Settlement Agreement, by inadequately performing repairs and/or inflicting additional damage on the vehicle, resulted in a "failure of consideration" for the Settlement Agreement, such that Plaintiffs' release of claims against Defendants is not enforceable. (Dkt. entry no. 10, Pl. Opp'n at 8-9.) Plaintiffs also argue that the Settlement Agreement should be set aside for "fraud and unseemly behavior" on the basis of Plaintiffs' allegations that Winnebago intentionally failed to make certain repairs to the vehicle on the assumption that Plaintiffs would not be able to confirm whether the repairs had been made. (Id. at 9.)

## DISCUSSION

### I. 12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the 'pleader is entitled to relief.'"  <u>Iqbal</u>, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  <u>See</u> <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, Plaintiffs have attached to the Complaint, <u>inter</u> <u>alia</u>, the receipt for the purchase of the vehicle, the financing agreement, the Winnebago express written warranty, various repair invoices and "warranty write up[s]," and the Settlement Agreement.  (Compl., Exs. A-E.)  Thus, the Settlement Agreement and other documents attached to and relied upon in the Complaint are properly before the Court at this juncture.

**II.  Legal Effect of the Settlement Agreement**

The parties agree that a settlement agreement is a contract, and that the Settlement Agreement is to be interpreted pursuant to basic contract law. (Defs. Br. at 5; Pl. Opp'n at 8.) However, they disagree as to the legal effect of the Settlement Agreement, specifically the portion of the Settlement Agreement in which Plaintiffs agreed to release Defendants from "any and all claims and causes of action . . . which were asserted or could have been asserted involving the Subject Vehicle" up to the date of the Settlement Agreement, with respect to the current action. (Defs. Br. at 5; Settlement Agreement at ¶ 2.)

**A.  Enforceability and Applicability of Settlement Agreement**

Plaintiffs' contention that Winnebago's alleged material breach of the Settlement Agreement resulted in a "failure of consideration," such that the contract is no longer enforceable, exhibits circular logic confusing the promise aspect of contract formation with the performance and execution thereof. (Pl. Opp'n at 8.) Essentially, Plaintiffs concede that the Settlement Agreement was valid when entered into, but now seek to set it aside.

Where the terms of a contract are clear, a court "must enforce the unambiguous terms as written, and it has 'no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the

9

instrument.'"  Sluka v. Landau Uniforms, Inc., 383 F.Supp.2d 649, 655 (D.N.J. 2005) (quoting E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc., 838 A.2d 494, 497 (N.J. App. Div. 2004)).  We find that the terms of the Settlement Agreement are clear, and no party suggests that any term therein may be ambiguous.  The Settlement Agreement, negotiated and entered into by both sides, provided that Winnebago would effect certain enumerated repairs to "commercially reasonable standards" and pay Plaintiffs $17,500, in exchange for Plaintiffs' release of any and all claims under state and federal law based on alleged defects or nonconformities against Defendants that could have been asserted up to the date of the Settlement Agreement.  (Settlement Agreement at ¶¶ 1-3.)  The Settlement Agreement contemplates and provides for the situation that arose here, Plaintiffs' dissatisfaction with the repairs performed by Winnebago, in that Winnebago warranted such repairs for a period of six months from the return of the vehicle to Plaintiffs.  (Id. at ¶ 1.)  Any remaining defects or nonconformities after the return of the vehicle would thus fall within the clear terms of the Settlement Agreement, not act as a ground for rescission thereof.

    We find that each of the claims pleaded in the Complaint are barred by the terms of the Settlement Agreement, in that they pertain to alleged defects and non-conformities of which Plaintiffs were aware prior to the execution of the Settlement Agreement and which, indeed, prompted the negotiation and

10

execution of the Settlement Agreement in the first place. Although Plaintiffs' brief in opposition to the motion contends that the Complaint "sets forth claims for damages inflicted on the vehicle during Winnebago's purported attempts to perform" the repairs set forth in the Settlement Agreement, none of the counts listed in the Complaint expressly refer to these post-Settlement Agreement alleged damages as a basis for recovery. To the extent Plaintiffs believe Winnebago breached the Settlement Agreement, the proper remedy is a suit for breach of that contract; they remain bound by its terms unless they can make the showing, by clear and convincing proof, that the Settlement Agreement should be set aside because it was achieved through fraud.

### B.   Fraud or Deception in Entering Settlement Agreement

A settlement agreement "is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce it as it does other contracts." Pascarella v. Bruck, 462 A.2d 186, 190 (N.J. App. Div. 1983) (quoting Honeywell v. Bubb, 325 A.2d 832, 835 (N.J. App. Div. 1974)). Because of the strong public policy favoring settlement of litigation, courts are loath to set aside settlement agreements where the party seeking to do so cannot establish "fraud, mutual mistake, undue haste, pressure or unseemly conduct in settlement negotiations." Honeywell, 325 A.2d at 835-86. Courts therefore require clear and convincing proof of fraud in

11

order to vacate a settlement agreement.  Nolan ex rel. Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990).

The sole allegation in the Complaint suggesting fraud is that Winnebago "intentionally failed to perform certain hard to confirm repairs."  (Pl. Opp'n at 9; see Compl. at ¶ 21.) Plaintiffs' contention that this establishes that the Settlement Agreement was therefore achieved through fraud or deception is a threadbare legal conclusion not factually supported by the pleadings, which the Court notes could be read to suggest that Winnebago decided not to make hard-to-confirm repairs only after entering into the Settlement Agreement.  (Compl. at ¶ 21 ("Winnebago . . . failed to repair numerous of the defects and conditions that they agreed to perform in the May Agreement including . . . repairs that Winnebago believed plaintiffs would have no means of confirming.").)  Our reading of the Complaint simply reveals no allegation of fraud or unseemly behavior in the inducement of the contract.  See Mortellite v. Novartis Crop Protection, Inc., 460 F.3d 483, 492 (3d Cir. 2006).  Plaintiffs' contention that Winnebago's alleged failure to perform the repairs required under the Settlement Agreement "renders that agreement void and . . . unenforceable as a result of Winnebago's material breach" is, similarly, an unsupported legal conclusion not entitled to an assumption of veracity by the Court.  Iqbal, 129 S.Ct. at 1949-50.

12

The Court finds that Plaintiffs have pleaded no factual basis that might plausibly lead the Court to ultimately vacate the Settlement Agreement due to fraud or deception.  As the exhibits to the Complaint show, the Settlement Agreement was negotiated by means of a lengthy back-and-forth exchange with Plaintiffs' direct involvement and the assistance of counsel.  Plaintiffs do not dispute that Winnebago took possession of the vehicle for repairs and paid Plaintiffs $17,500.  Because the Settlement Agreement is enforceable and bars the claims pleaded in the Complaint, Plaintiffs' appropriate recourse is the warranty set forth in the Settlement Agreement and/or a cause of action for breach of the Settlement Agreement.  The Complaint seeks no such relief, but rather asserts the very claims that Plaintiffs released as against Defendants in the Settlement Agreement.

## CONCLUSION

For the reasons discussed supra, the Court will dismiss the Complaint.  Because it appears that amendment would be futile, dismissal of the claims set forth in the Complaint will be with prejudice.

The Court will issue an appropriate Order and Judgment.

    s/ Mary L. Cooper    
**MARY L. COOPER**
United States District Judge

Dated:    September 30, 2011